**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| NADINE E.,[1] | : | Case No. 2:25-cv-665 |
| | : | |
| Plaintiff, | : | |
| | : | Magistrate Judge Peter B. Silvain, Jr. |
| vs. | : | (by full consent of the parties) |
| | : | |
| COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY**

This matter is before the Court for review of Plaintiff Nadine E.'s claim challenging the Social Security Administration's denial of her application for a period of disability and Disability Insurance Benefits (DIB). The case is before the Court upon Plaintiff's Statement of Errors (Doc. #11), the Commissioner's Memorandum in Opposition (Doc. #12), and the administrative record (Doc. #10).

## I. <u>Background</u>

The Social Security Administration provides DIB to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York*, 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability" encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs only by their first names and last initials. *See also* S.D. Ohio General Rule 22-01.

"substantial gainful activity." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen*, 476 U.S. at 469-70.

In the present case, Plaintiff protectively applied for benefits on December 5, 2022, alleging disability commencing May 30, 2022, due to several impairments, including chronic insomnia, cognitive impairment, and fatty liver disease. (Doc. #10, *PageID* #228). On appeal, additional impairments were added, including memory loss; coronary artery disease; fibromyalgia; hypothyroidism; GERD; high cholesterol; and hypertension. *Id.* at 257. After Plaintiff's application was denied initially and upon reconsideration, she requested and received a telephone hearing before Administrative Law Judge (ALJ) Jeannine Lesperance on March 18, 2024. Thereafter, the ALJ issued a written decision, addressing each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1420. She reached the following main conclusions:

Step 1: Plaintiff did not engage in substantial gainful activity since her alleged disability onset date.

Step 2: Since her alleged disability onset date, Plaintiff has had the following severe impairments: unspecified neurocognitive disorder and right hip degenerative joint disease.

Step 3: Since the alleged disability onset date, she did not have an impairment or combination of impairments that met or medically equaled the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Since the alleged disability onset date, she has had the residual functional capacity (RFC) to perform medium work as defined in 20 CFR 04.1567(c) except she can perform detailed but not complex tasks.

Since the alleged disability onset date, she has been unable to perform her past relevant work.

Step 5: Considering her age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform.

(Doc. #10, *PageID* #s 48-58). Based on these findings, the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, at any time from May 30, 2022, the alleged onset date, through September 30, 2023, the date last insured, or through the date of the ALJ's decision. *Id.* at 58.

The evidence of record is adequately summarized in the ALJ's decision (Doc. #10, *PageID* #s 46-58), Plaintiff's Statement of Errors (Doc. #11), and the Commissioner's Memorandum in Opposition (Doc. #12). To the extent that additional facts are relevant, they will be summarized in the discussion section below.

## II. Standard of Review

Judicial review of an ALJ's decision is limited to whether the ALJ's finding are supported by substantial evidence and whether the ALJ applied the correct legal standards. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007). Substantial evidence is such "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citing *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007)). It is "less than a preponderance but more than a scintilla." *Id.*

The second judicial inquiry—reviewing the correctness of the ALJ's legal analysis—may result in reversal even if the ALJ's decision is supported by substantial evidence in the record.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). Under this review, "a decision of the Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746 (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## III. Discussion

Plaintiff contends that the ALJ erred at Step Two of her analysis by failing to identify Plaintiff's insomnia as a severe impairment. (Doc. #11, *PageID* #s 402–05). Plaintiff next argues that the ALJ failed to properly apply the criteria of Social Security Ruling (SSR) 16-3p by focusing on her failure to obtain treatment without first making a good cause determination about her reasons for the lack of treatment. *Id.* at 405-08. Finally, Plaintiff also contends that the Court should remand the case pursuant to Sentence Six of 42 U.S.C. § 405(g), because Plaintiff submitted new and material evidence at the Appeals Council level. *Id.* at 408-09.

In response, the Commissioner maintains that the ALJ specifically considered the evidence regarding insomnia, as well as Plaintiff's subjective reports about a long-term history of insomnia and a trial of thirty different medications. (Doc. #12, *PageID* #416). The Commissioner also contends that the ALJ properly considered the limited treatment for insomnia in reaching her disability determination. *Id.* at 420. Finally, the Commissioner counters that Plaintiff's assertions that the Appeals Council did not consider the letter from Dr. Butcher have no merit. *Id.*

### A. Step-Two Determination: Insomnia

Plaintiff argues that the record contains multiple sources establishing chronic insomnia as

a medically determinable impairment. She contends that treatment notes reflect ongoing complaints of insomnia and initiation of cognitive behavioral therapy for insomnia. (Doc. #11, *PageID* #403) (citing Doc. #10, *PageID* #s 298–99). She also notes that consultative examiner, Dr. Romero, diagnosed chronic insomnia and documented a long history of failed treatments, multiple medications, sleep studies, and behavioral therapy. *Id.* (citing Doc. #10, *PageID* #s 368–69). According to Plaintiff, this evidence satisfies the regulatory definition of a medically determinable impairment, and her insomnia has more than a "minimal effect" on her ability to perform basic work activities. *Id.* The Commissioner asserts that Plaintiff does not cite any evidence supporting insomnia as a medically determinable impairment during the relevant period from Plaintiff's alleged onset date of May 30, 2022, through September 30, 2023, the date last insured. (Doc. #12, *PageID* #s 413–14).

An ALJ must make several determinations at step two. First, an ALJ considers if a claimant's impairment constitutes a "medically determinable" impairment, i.e., an impairment that results from anatomical, physiological or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. 20 C.F.R. §§ 404.1520; 404.1521. A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. § 404.1521. Additionally, it must meet the durational requirement. 20 C.F.R. § 404.1509. "If an alleged impairment is not medically determinable, an ALJ need not consider that impairment in assessing the RFC." *Rieder v. Comm'r of Soc. Sec.*, No. 2:20-CV-5858, 2021 WL 5881784, at *4 (S.D. Ohio Dec. 13, 2021), *report and recommendation adopted*, No. 2:20-CV-5858, 2021 WL 6197808 (S.D. Ohio Dec. 30, 2021)

(quoting *Moore v. Comm'r of Soc. Sec.*, No. 2:20-CV-5114, 2021 WL 5149714, at *7 (S.D. Ohio Nov. 5, 2021)). "Plaintiff has the burden of proving the existence of a medically determinable impairment." *Id.* (quoting *Moore*, 2021 WL 5149714, at *7). "Generally, courts have found that an ALJ's failure to find that a condition is medically determinable is not harmless error unless the record reflects that the ALJ nevertheless considered the impairment in developing the RFC." *Treadway v. Comm'r of Soc. Sec.*, No. 1:25-cv-1744, 2026 WL 1674852, at *46 (N.D. Ohio June 10, 2026) (citing *Durbin v. Comm'r of Soc. Sec*., No. 2:17-cv-896, 2020 WL 2744100, at *13–14 (S.D. Ohio May 27, 2020) (Morrison, D.J.)) (other citations omitted).

If an impairment is medically determinable, then an ALJ must determine whether it is severe. *Id.* A "severe impairment" is defined as "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The finding of at least one severe impairment at step two is merely a "threshold inquiry," the satisfaction of which prompts a full investigation into the limitations and restrictions imposed by all the individual's impairments. *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007). "And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two '[does] not constitute reversible error.'" *Id.* (quoting *Maziarz v. Sec'y of Health and Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *accord Smith v. Comm'r of Soc. Sec.*, No. 2:20-cv-1511, 2021 WL 972444, at *10 (S.D. Ohio Mar. 16, 2021) (finding no error despite ALJ's failure to designate plaintiff's neuropathy as a medically determinable or severe impairment where the ALJ discussed plaintiff's neuropathy and considered its impact on plaintiff's ability to work).

At step two, the ALJ found that Plaintiff's insomnia was "non[-]medically determinable since the alleged onset date." (Doc. #10, *PageID* #49). Having reviewed the evidence in the record, the undersigned finds that there is substantial evidence to support the ALJ's determination that Plaintiff's insomnia was a non-medically determinable impairment. Plaintiff alleges a disability onset date of May 30, 2022. (Doc. #11, *PageID* #399). Plaintiff testified that she had insomnia for approximately forty years at the time of the hearing, and she first sought treatment for insomnia in 2005. (Doc. #7, *PageID* #52). After more than thirty different medications and various forms of therapy, Plaintiff testified that she ceased taking any medication for insomnia in 2015 due to concerns regarding the effects on her liver. *Id.* 52–53. Plaintiff was later diagnosed with fatty liver disease in 2021, which she testified precluded her from many of the medications developed to manage insomnia, adding that "her primary care physician did not think that there was anything new that she should try." *Id.* at 53. To help manager her insomnia without medication, Plaintiff testified that she "ke[pt] a schedule for arising in the morning and retiring to bed at night at the same times, wore sunglasses in the morning, engaged in regular exercise, and ate healthy." *Id.* Plaintiff further testified that her insomnia had "improved somewhat" after she stopped working, "due to greater flexibility." *Id.* at 55. Plaintiff does not appear to take issue with this characterization of her testimony.

The ALJ summarized Plaintiff's testimony and subjective reports, finding that they were "not consistent with the record" and that "[t]here is essentially no objective evidence to support her complaints." *Id.* at 54. The ALJ cited that, while Plaintiff's primary care physician, Mary Butcher, M.D., diagnosed her with insomnia, the diagnosis and opined limitations were "not

supported." *Id.* Specifically, the ALJ noted that, in November 2022, Dr. Butcher only diagnosed Plaintiff with hyperlipidemia and coronary artery disease. *Id.* It was not until 6 months later, in May 2023, that Dr. Butcher made additional diagnoses, adding hypertension, fatty liver, hypothyroidism, GERD, and "chronic insomnia, accompanied by cognitive issues ('brain fog')." *Id.* Dr. Butcher's examinations of Plaintiff, however, yielded "entirely normal" results. *Id.* ("Her mental status was normal, including attention, memory, cognitive function, speech, orientation, and behavior[.]"). Ultimately, the ALJ found:

> Regarding the claimant's own statements, the limited records do not show consistent complaints of insomnia to any extent, and certainly not to the extreme extent reported in connection with her disability application. When asked at the hearing as to why she was not pursuing treatment for insomnia, she reported that in the remote past (possibly 2005 to 2016) she tried a variety of medications and other modalities, such as hypnosis and massage therapy, but they were ineffective. She testified that once fatty liver was diagnosed in 2021, her "liver doctor" and primary care doctor told her that she could not try the new sleep medicines due to her fatty liver. However, none of that is documented in this file, either that the newer medications are contraindicated or that she even asked. When asked if she considered cognitive behavioral therapy or mental health-oriented modalities, she testified that she saw a psychologist in the remote past to try hypnosis, but nothing else. While I considered her explanation, it does not suffice to fully explain the lack of treatment in this record. First, before she was diagnosed with fatty liver, she could have sought other medication treatment between 2016 and 2021. Second, even if it were established that newer sleep medications were contraindicated, that does not explain why she would not see sleep medicine to confirm that or ask about treatment when seen by pulmonology in late 2021 (7F/10), and why she would not diligently seek other modalities of treatment, given the alleged severity of her symptoms. She does not report side effects of medication. She does not report precipitating or aggravating factors. She reports doing very little on a daily basis, even though, per her testimony, if anything, her sleep has improved somewhat since she stopped working due to greater flexibility. Yet, with the same problems, she worked at highly skilled job for many years, having some difficulty near the end, per her reports, after the practice where she worked took on an additional surgeon and they merged with some other practices which made her work more difficult. Therefore, while I considered the subjectively reported symptoms, they are inconsistent with a preponderance of the evidence. For these reasons, I cannot find

that they support greater limitations in the RFC.

*Id.* at 54–55.

Plaintiff also alleges that the ALJ failed to "evaluate the functional effects of the impairment, as they relate to the limitations in the [RFC]." (Doc. #11, *PageID* #404). However, the ALJ expressly engaged with Plaintiff's reports of insomnia, *ad nauseum*, when formulating her RFC. (Doc. #7, *PageID* #54–55). As discussed above, the ALJ expressly found that "while [she] considered the subjectively reported symptoms, they are inconsistent with a preponderance of the evidence" and that she "cannot find that [the subjectively reported symptoms] support greater limitations in the RFC." *Id.* at 55. Therefore, even if the ALJ erred by failing to find Plaintiff's insomnia was a non-medically determinable impairment, the error would be harmless because the ALJ considered it when formulating Plaintiff's RFC. *Treadway*, 2026 WL 1674852, at *46 (citing *Durbin*, 2020 WL 2744100, at *13–14). Furthermore, even if the ALJ failed to consider Plaintiff's insomnia at Step Three, because the ALJ determined that Plaintiff's mental health impairments were non-medically determinable, she was not required to consider such impairments in the RFC analysis. *See Jones v. Comm'r of Soc. Sec.*, No. 3:15-CV-00428, 2017 WL 540923, at *6 (S.D. Ohio Feb. 10, 2017) (Newman, M.J.).

Accordingly, Plaintiff's first assignment of error is not well taken.

**B. ALJ's Subjective Symptom Analysis**

Plaintiff next contends that the ALJ's analysis violated SSR 16-3p because she drew adverse inferences from Plaintiff's limited treatment for insomnia without considering her valid explanations or the evidence of longstanding, failed treatment efforts. (Doc. #11, *PageID* #s 405-

08).

When a Plaintiff alleges symptoms of disabling severity, the ALJ must follow a two-step process for evaluating those symptoms. *See* 20 C.F.R. § 404.1529, SSR 16-3p, 2016 WL 1119029, *3 (March 16, 2016). First, the ALJ must determine whether the individual has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 404.1529(c)(3).

In performing this assessment, the ALJ is not required to analyze all seven factors but must still show that she considered the relevant evidence. *Roach v. Comm'r Soc. Sec.*, No. 1:20- cv-01853-JDG, 2021 WL 4553128, at *10–11 (N.D. Ohio Oct. 5, 2021). Indeed, the ALJ's assessment of an individual's subjective complaints and limitations must be supported by substantial evidence and be based on a consideration of the entire record. *Rogers*, 486 F.3d at 247 (internal quotation omitted). Nonetheless, it remains the province of the ALJ and not the reviewing court to assess the consistency of subjective complaints about the impact of a plaintiff's symptoms with the record as a whole. *See id.* Therefore, "absent a compelling reason," an ALJ's credibility/consistency

determination will not be disturbed. *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). However, courts "will not find an individual's symptoms inconsistent with the evidence in the record … without considering possible reasons … she may not comply with treatment or seek treatment consistent with the degree of … her complaints." SSR 16-3p, 2017 WL 5180304, *9–10 (revised and republished Oct. 25, 2017). More simply, when "drawing an adverse inference from [a plaintiff's] lack of medical treatment," an ALJ is required to consider why a claimant failed to seek medical treatment consistent with the severity of her complaints. *Dooley v. Comm'r of Soc. Sec*., 656 F. App'x 113, 119 (6th Cir. 2016).

In the instant case, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Doc. #10, *PageID* #53). In considering Plaintiff's subjective complaints and failure to seek treatment or to seek treatment consistent with the severity of her subjective complaints, the ALJ noted that Plaintiff was asked why she was not pursuing treatment for her reported insomnia; the ALJ further noted that Plaintiff testified that "in the remote past (possibly 2005 to 2016) she tried a variety of medications and other modalities… but they were ineffective." *Id.* at 54. Plaintiff testified that she was also diagnosed with fatty liver disease in 2021 and "her 'liver doctor' and primary care doctor told her that she could not try the new sleep medicines due to her fatty liver." *Id.* This guidance was not noted in the record. *Id.* At the hearing, Plaintiff was also asked if she considered cognitive behavioral therapy or mental health-oriented modalities, and she testified that "she saw a psychologist in the remote past to try hypnosis, but nothing else." *Id.* Accordingly, in light of the above and for the reasons discussed at length in the

above sections, the ALJ properly considered possible reasons why Plaintiff failed to seek treatment or seek treatment consistent with the severity of her subjective complaints.

Plaintiff also contends that the ALJ erred in her subjective complaints analysis by "rest[ing]" her determination "on [her] assertion that 'there is essentially no objective evidence to support her complaints.'" (Doc. #11, *PageID* #406). However, an ALJ's reliance on a lack of objective findings does not *per se* require remand "where the ALJ also relies on other considerations[,] such as a claimant's activities of daily living or improvement with treatment." *Tatum S. v. Comm'r of Soc. Sec.*, No. 2:25-CV-932, 2026 WL 890377, at *15 (S.D. Ohio) (Jolson, M.J.) (quoting *Rossi v. Comm'r of Soc. Sec.*, No. 1:25-CV-625-DCN, 2025 WL 3671796 (N.D. Ohio Dec. 18, 2025)). Here, the ALJ considered Plaintiff's daily activities (Doc. #10, *PageID* #s 50–53) and Plaintiff's reported improvements with and without treatment (*id.* at 52, 54). Further, the ALJ does not simply cite a lack of objective evidence but rather extensively engages with the inconsistencies between Plaintiff's reported medical experiences prior to 2015 and the evidence in the record. *Id.* "A plaintiff does not demonstrate a violation of SSR 16-3p, 2016 SSR LEXIS 4 simply by reiterating the same subjective symptoms she believes should have been credited by the ALJ…." *Zingale v. Kijakazi*, No. 1:20-cv-02197, 2022 WL 824148, at *8 (N.D. Ohio Mar. 18, 2022); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints"). It is the ALJ, not the undersigned, who must "judge the consistency of [Plaintiff's] statements," *Lipanye*, 802 F. App'x at 171, by making determinations that are "reasonable and supported by the substantial evidence." *Rogers*, 486 F.3d at 249. Here, the ALJ discussed the consistency of Plaintiff's subjective complaints, found them

inconsistent with the evidence in the record, and adequately "buil[t] an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp.2d 875, 877 (N.D. Ohio 2011).

Finally, Plaintiff argues that the ALJ impermissibly substituted her lay opinion for medical expertise by "rely[ing] on the assertion that [Plaintiff] worked for many years with the same problem." (Doc. #11, *PageID* #407). Plaintiff argued that this assertion is "speculative, unsupported by any medical evidence, and ignores evidence that her condition worsened over time." *Id.* However, Plaintiff's assertion is perfunctory, at best. "It is not sufficient for a party to mention [an] argument in the most skeletal way, leaving the court to… put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997). Plaintiff fails to point to evidence in the record or provide any authoritative support for her argument. Without such evidence, the record—as informed by Plaintiff's testimony—plainly indicates that Plaintiff maintained highly skilled employment from over thirty years while experiencing insomnia—treated and untreated. (Doc. #10, *PageID* #55). As Plaintiff testified, she experienced insomnia for more than forty years at the time of the hearing and worked in a highly skilled position—"a practice administrator for a busy surgical ophthalmology practice" (Doc. #11, *PageID* #400)—for many years before she noted "memory loss, workplace errors, and incomplete tasks." (Doc. #10, *PageID* #55). Plaintiff ultimately left her position in May 2022, "when [she and her employer] agreed she could no longer perform her duties due to severe chronic insomnia…." (Doc. #11, *PageID* #400). However, these alleged worsening effects to Plaintiff's cognitive abilities, specifically as a result of insomnia, are not reflected in the medical evidence and could be explained by changes at her work—such as

"[taking] on an additional surgeon" and "merg[ing] with some other practices"—which Plaintiff testified "made her work more difficult." (Doc. #10, *PageID* #55). Further, evidence in the record indicates that Plaintiff's insomnia has improved in recent years due to increased flexibility, according to her testimony. *Id.* at 53–55. Accordingly, the undersigned finds that the ALJ's determination is supported by substantial evidence.

Therefore, the undersigned finds Plaintiff's second assignment of error unpersuasive.

**C. New Evidence Submitted to the Appeals Council**

Finally, Plaintiff alleges that the Appeals Council erred by failing to consider new evidence in the form of a letter submitted by Dr. Butcher that "directly addressed the ALJ's stated reasons for denial." (Doc. #11, *PageID* #408).

Under Sentence Six of 42 U.S.C. § 405(g), the Court may remand a case to the Social Security Administration "because new evidence has come to light that was not available to the claimant at the time of the administrative proceeding and that evidence might have changed the outcome of the prior proceeding." *Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991). A Sentence Six remand for consideration of additional evidence is warranted only if (1) there is good cause for the failure to incorporate this evidence into the record at the prior hearing, and (2) the evidence is new and material. 42 U.S.C. § 405(g); *see Melkonyan*, 501 U.S. at 89; *see also Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Plaintiff, the party seeking a Sentence Six remand in the present case, bears the burden of establishing the two requirements. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir. 2006). Evidence is "new only if it was 'not in existence or available to the claimant

at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). To be "material," new evidence (1) must be relevant to and probative of an applicant's condition prior to the Commissioner's decision, and (2) must establish a reasonable probability that the Commissioner would have reached a different decision if the evidence had been considered. *Smith v. Comm'r of Soc. Sec.*, No. 1:07-cv-199, 2008 WL 2311561, at *6 (S.D. Ohio June 4, 2008) (citing *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir. 1986)). To establish good cause in this Circuit, a plaintiff "must give a valid reason for his failure to obtain evidence prior to the hearing" for inclusion in the administrative record. *Oliver*, 804 F.2d 966 (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)). "Evidence produced by continued medical treatment" meets the good-cause requirement for a Sentence Six remand, unlike evidence generated "for the purpose of attempting to prove disability." *Smith v. Comm'r of Soc. Sec*., No. 2:18-cv-01171, 2020 WL 358703, at *8 (S.D. Ohio Jan. 22, 2020); *see also Powell v. Comm'r of Soc. Sec.*, No. 3:07-cv-074, 2008 WL 886134, at *9 (S.D. Ohio March 28, 2008) (citing *Koulizos v. Sec'y of Health & Human Servs.*, 802 F.2d 458, 1986 WL 17488, at *2 (6th Cir. Aug. 19, 1986)).

As a threshold issue, Plaintiff contends that "the Appeals Council neither listed the letter as an exhibit nor addressed it in its denial…." (Doc. #11, *PageID* #409). However, this is only partly true. Plaintiff submitted a treatment note from Dr. Butcher dated June 24, 2024, to the Appeals Council. (Doc. #10, *PageID* #s 38–42). In their denial, the Appeals Council expressly addressed the letter, finding "this evidence does not show a reasonable probability that it would

change the outcome of the decision" and noting that they "did not exhibit this evidence." *Id.* at 28.

While Plaintiff can *per se* establish that Dr. Butcher's letter did not exist at the time of the hearing, as it was generated three months after the hearing and one month after the ALJ's decision as issued, she falls short of establishing good cause for her failure to acquire this additional evidence in time to present it to the ALJ. First, Plaintiff has failed to give any reason, let alone a "valid reason," why Dr. Butcher's letter was not obtained prior to the hearing. *See Oliver*, 804 F.2d 966. Second, by Plaintiff's own admission, the letter rebuts the ALJ's denial, which indicates that it was generated "for the purpose of attempting to prove disability." (Doc. #11, *PageID* #408); *Smith*, 2020 WL 358703, at *8. This purpose does not satisfy the good-cause requirement. *Smith*, 2020 WL 358703, at *8. Therefore, remand is not warranted.

For these reasons, Plaintiff's Statement of Errors is not well taken.

**IT IS THEREFORE ORDERED THAT**:

1. Plaintiff's Statement of Errors (Doc. #11) is **DENIED;**
2. The Commissioner's non-disability determination is **AFFIRMED**; and
3. The case is terminated on the docket of this Court.

September 30, 2026

*s/Peter B. Silvain, Jr.*
Peter B. Silvain, Jr.
United States Magistrate Judge